```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA        *

           vs.                  *   CRIMINAL NO. MJG-14-0429

AVAUN JOHNSON                   *

*     *     *     *     *     *     *     *     *
```

MEMORANDUM AND ORDER

The Court has before it Petitioner's Motion to Vacate, Set Aside, or Correct Sentence [Document 80]. The Court finds a hearing unnecessary.

I. BACKGROUND

The Indictment charges Defendant Avaun Johnson (referred to herein as "Petitioner" or "Johnson") with three federal offenses committed on February 7, 2014, that are related to a shooting that had occurred almost a month earlier.

On January 21, 2014, Mr. Seifullah Bridges ("Bridges") was shot multiple times, allegedly by Petitioner Avaun Johnson.[1] The shooting took place in or near 960 President Street in Annapolis, and the shooter left him bleeding on the sidewalk nearby.

Investigator John Murphy of the Annapolis Police Department investigated and prepared an Investigative Report [ECF No. 86-3]

---

[1] Johnson was indicted in state court on the shooting charges, was tried and acquitted.

1

in which he described Bridges' statements about a trip to Philadelphia where he met a man whom he named as "Naw" or "Pop" (who turned out to be Johnson), how the two later agreed to meet in Annapolis on January 21, and the events leading to the shooting.  On January 27, Bridges identified a photo of Johnson as a photo of the man who shot him but would not sign it then and asked Murphy to come back the next day. On January 28th, Murphy returned to see Bridges who was then represented by counsel and did not then look at the photo or make any identification.  On January 30, Bridges' attorney contacted Murphy and agreed to let Bridges look at photos.  On February 6, Murphy met with Bridges and his attorney.  Bridges then identified a photograph of Johnson as a photo of the man who shot him and signed a document confirming the identification.

    On February 7, 2014, Annapolis police officers went to Johnson's apartment to execute a state arrest warrant. The officers saw Petitioner leaving the apartment carrying a trash bag.  When Johnson saw the police officers he returned to his apartment and dropped the bag inside.  Soon thereafter Johnson was taken into custody and the police found that the bag contained a substance they suspected to be marijuana. Johnson was taken to the police station and spontaneously said "I'm f**ked. They are going to search and find the gun, and I'm a

convicted felon with a handgun." Plea Agreement [ECF No. 65 at 4]. The police officers obtained a search warrant from a state court district judge and effected a search of the apartment, finding therein 62 grams of heroin, other controlled substances, and a 380 caliber Bersa, model Thunder, semiautomatic handgun.

Johnson's trial counsel filed motions to suppress evidence and statements. A motions hearing and jury selection for Johnson's trial were scheduled to occur on October 26, 2015. On that day, before the hearing or jury selection took place, Johnson signed the plea agreement [ECF No. 65] in which he admitted ownership of the gun and drugs and that he intended to distribute the drugs. Id. at 5. On October 26, 2015, Johnson pleaded guilty to Count 1 (possession of heroin with intent to distribute violating 221 U.S.C. § 841(a)) and Count 3 (possession of a firearm by a felon violating 18 U.S.C. § 922(g)). Johnson also admitted to having violated conditions of supervised release in Case No. CCB-06-0554.

On January 5, 2016, Judge Quarles imposed the sentence, pursuant to Rule 11(1)(C)(1)(c), of 151 months of incarceration on Count 1 with a concurrent sentence of 120 months on Count Three with the Government recommending – and Johnson ultimately receiving - a 48 month concurrent sentence for the supervised release violation in Case No. CCB-06-0554.

By the instant Motion, timely filed pursuant to 28 U.S.C. § 2255, Petitioner seeks to have his conviction and sentence vacated.

II. <u>DISCUSSION</u>

Petitioner asserts that he was denied his right to the effective assistance of counsel.

In order to prevail on a claim that counsel's representation violated his Sixth Amendment right to effective assistance of counsel, Petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness,"[2] and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome [of the proceedings]." <u>Id.</u> at 694.

Petitioner bases his ineffective assistance claim on counsel's failure to:

    a.   Competently litigate a Fourth Amendment claim for suppression, and

---

[2] Thus overcoming a presumption that counsel's conduct (<u>i. e.</u> representation of the criminal defendant) was reasonable. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984).

    b.    Represent Petitioner effectively during plea negotiations and communicating an alleged Government threat to indict his common law wife.

The Government contends that Petitioner was competently represented regarding his suppression motion and denies that there was any threat to indict Petitioner's common law wife.

    A. <u>Suppression</u>

The subject of the suppression motion is the evidence obtained from the execution of a search warrant authorizing the Annapolis and Anne Arundel County law enforcement to search Johnson's residence.  The search and seizure affidavit [ECF No. 83-1] was presented to Judge Philip Caroom of the Circuit Court for Anne Arundel County, Maryland, signed by investigator Murphy.

Murphy sought to seize the following items located at 407D Secluded Post Circle, Glen Burnie, MD, 21061:

> Any and all items related to the Possession of Marihuana and the attempted murder of Seifullah Bridges including but not limited to controlled dangerous substance packaging and weighing materials, tally sheets, electronic records, handguns, ammunition and any other items associated with these two crimes.

Murphy Aff. [ECF No. 83-1 at 1] at 2.

In the affidavit, Murphy referred to the attempted murder of Seifullah Bridges on January 21, 2014, wherein Bridges was shot numerous times throughout his body.  The affidavit stated

5

that Bridges identified Petitioner from a photo lineup as the person who shot him, and described Johnson's arrest and possession of marijuana. Murphy referred to a statement made by Johnson to another police officer that "when we go into the house we are going to find a gun which is going to be more Federal time." Id. at 3.

Petitioner's counsel presented a motion to suppress evidence derived from the search warrant. Petitioner claims that his counsel failed to represent him adequately in regard to the suppression motion because he did not speak with Petitioner's state counsel nor obtain certain state discovery documents relating to the search warrant that would have led to a Franks hearing. Petitioner claims that Murphy knowingly submitted a false affidavit, that the false statements were material and had been added to provide the false appearance that there was probable cause supporting the issuance of the warrant.

Specifically, Petitioner claims that Bridges had not identified Johnson as the shooter at the time of the affidavit, i.e., February 7, 2014. Petitioner is incorrect. Murphy's investigation report plainly states that Bridges identified Johnson as the shooter orally on January 27 and both orally and in writing on February 6. [ECF No. 85-4].

> I then presented Mr. Bridges with the second photographic line up which included Avaun Johnson in

6

> photograph number five.  Again Mr. Bridges read the opening page aloud and advised he understood the directions.  He then began looking at the photographs.  Mr. Bridges looked at all six photographs, then turned back to photograph number five, pointed at the photograph and stated "I think this is the mother f[**]ker right here."  He then sat back in his chair and winced in pain over stomach pains he was experiencing.  I noticed Mr. Bridges was sweating profusely from his forehead.  I asked him if he was ok and he stated "I'm hurting".  I asked him to write down in the spaces provided what number he had picked out and sign the disclaimer form of the photographic line up acknowledging which photograph he had picked out.  Mr. Bridges then stated to me that he did not want to sign the photographic line up at this time and wanted me to come back on 01/28/14 so he could look at the photographic line up again and sign it.  I did not force Mr. Bridges to sign anything nor did I make any further statements to him regarding the line up.
>
> ***
>
> On 2/06/14 at 1412hrs I met with Mr. Bridges and Mrs. A1exander.  I presented Mr. Bridges with my photographic line up while Mrs. A1exander sat in the room with us.  Mr. Bridges was again asked to read the disclaimer portion of the photographic line up aloud which he did.  I asked him if he understood it which he stated "yes".  I then advised him if he understood he was not promised, threatened or forced to identify anyone, he stated again "yes".  Mr. Bridges observed all six photographs again and returned to photograph number 5 and stated "this is the guy who shot me".  I asked what this persons name was, Mr. Bridges stated "Naw", that is "Naw".  Photograph number 5 was Avaun Johnson.  I asked Mr. Bridges to sign and date the disclaimer form acknowledging that he had identified photograph number 5 as the person responsible for shooting him. After he signed the form I had his attorney, Mrs. A1exander sign the form as a witness.

Investigative Rep. [ECF No. 86-3] at 13, 15.

7

The parties have not clearly – if at all – particularized the evidence that would have been suppressed had Johnson's motions succeeded at trial.  However, the record adequately establishes that Johnson's trial counsel provided him reasonable and effective representation regarding suppression.  It was reasonable for counsel to have decided not to pursue a <u>Franks</u> hearing claim when no evidence existed to contradict the facts alleged in Murphy's affidavit.[3]  Johnson alleges that Bridges gave no identification before May 2014, but the Investigative Report and evidence on record reveal that Bridges had identified Johnson by February 6, 2014.[4]  <u>See</u> Investigative Rep. [ECF No. 86-3] at 13, 15; Photographic Lineup Form [ECF No. 86-4].

Moreover, even if counsel's representation fell below a standard of reasonableness, there is no evidence of prejudice, because there is no reasonable probability that the result of the suppression motion would have been different.  Johnson presents no basis for the Court to conclude that Circuit Court Judge issued the warrant based on any false statement.  There

---

[3]  Petitioner's counsel, David Solomon, Esq., advises that he did speak with Petitioner's state counsel, who did not mention any basis for a <u>Franks</u> hearing type claim. Solomon Aff. [ECF No. 85-5] ¶¶ 5-6.

[4]  Johnson points to date discrepancies on the Photographic Lineup Form signed by Bridges, but regardless of what date it was signed, January 27 or February 6, both dates occurred before May 2014 and before the February 7 warrant date. [ECF No. 86-4].

was ample evidentiary basis for Judge Caroom to find probable cause to justify issuing the search warrant.

Furthermore, even if Judge Caroom had erred in finding probable cause, there is no basis to find the Leon principle inapplicable to deny suppression on the seizing officer's reliance upon the search warrant.  See United States v. Leon, 468 U.S. 897, 920–21, 926 (1984)("[S]uppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.").


B.   Threat to Prosecute Common Law Wife

Johnson contends, but does not present probative evidence to prove, that the federal prosecutors obtained his guilty plea by threatening to prosecute his common law wife.  The prosecutors and Johnson's trial counsel deny that there was any such threat. See Solomon Aff. [ECF No. 85-5] ¶ 4.  There is no documentary evidence supporting the existence of such a threat. Johnson's statements under oath in his guilty plea proceeding do not refer to, or otherwise support, the existence of any such threat.

During the plea colloquy, Petitioner stated:

> **THE COURT**: Have you read and discussed the Indictment with your lawyer?

> **THE DEFENDANT:** Yes, sir.
> **THE COURT**: Has he answered all of your questions?
> **THE DEFENDANT:** Yes, sir.
> **THE COURT**: Has he done anything you told him not to do?
> **THE DEFENDANT:** No, sir.
> **THE COURT**: Has he refused to do anything that you did ask him to do?
> **THE DEFENDANT:** No, sir.
>
> **\* \* \***
>
> **THE COURT**: Did anyone threaten you or force you to get you to plead guilty?
> **THE DEFENDANT:** No, sir.
> **THE COURT**: Outside of what's in the plea letter, has anybody made any other promise or prediction to you about the sentence that I'm going to give you?
> **THE DEFENDANT:** No, sir.

Re-Arraignment Tr. [ECF No. 87] at 19-20.

As determined by the United States Court of Appeals for the Fourth Circuit in United States v. Lemaster, 403 F.3d 216 (4th Cir. 2005):

> "[A] defendant's solemn declarations in open court affirming [a plea] agreement ... 'carry a strong presumption of verity,' ", because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. "Indeed, because they do carry such a presumption, they present 'a formidable barrier in any subsequent collateral proceedings.' " White, 366 F.3d at 295-96 (quoting Blackledge, 431 U.S. at 74, 97 S.Ct. 1621). Thus, in the absence of extraordinary circumstances, . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always "palpably incredible" and "patently frivolous or false." . . . . Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is

10

>     conclusively established, and a district court should,
>     without holding an evidentiary hearing, dismiss any
>     § 2255 motion that necessarily relies on allegations
>     that contradict the sworn statements.

Id. at 221-22 (internal citations omitted).

Johnson has provided no plausible evidence in support of his allegation that the prosecution threatened to charge his common law wife, an allegation directly contradicted by his statements before Judge Quarles during the plea colloquy. There has been no concession or proof that Johnson's counsel was ineffective, or allegations of any other pertinent extraordinary circumstances. On the record, the Court finds no need for further proceedings regarding the existence of any alleged threat claimed by Johnson.

11

III. CONCLUSION

For the foregoing reasons:

1. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence [ECF No. 80] is DENIED.

2. The case shall be dismissed with prejudice.

3. Judgment shall be entered by separate Order.

SO ORDERED, this Thursday, July 20, 2017.

/s/
Marvin J. Garbis
United States District Judge