IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.                                                      Criminal No. ELH-14-0429

AVAUN JOHNSON,
        Defendant.

**MEMORANDUM OPINION**

Avaun Johnson, defendant, entered a plea of guilty on October 26, 2015, to the offenses of possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a), and possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1).  The plea was tendered pursuant to a Plea Agreement.  ECF 65 ("Plea Agreement").  Notably, pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties stipulated that a sentence of 151 months of imprisonment is the appropriate disposition.  *Id.* ¶ 7.

On January 5, 2016, Judge William D. Quarles, Jr., to whom the case was then assigned, sentenced Johnson to 151 months of imprisonment, with credit for time served from February 7, 2014.  ECF 70.  Judgment was entered on January 11, 2016.  ECF 73.[1]  The sentence was at the low end of the range recommended by the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines").  ECF 71 ("Amended Presentence Report" or "PSR"), ¶ 72.  Specifically, the Guidelines called for a sentence ranging from 151 to 188 months of imprisonment.  *Id.*

---

[1] On December 30, 2016, the case was reassigned to Judge Marvin Garbis because of the retirement of Judge Quarles.  Then, on August 7, 2019, after the retirement of Judge Garbis, the case was reassigned to me.

Johnson, who is now self-represented, filed a "Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) & The Provision's [sic] of the 'First Step Act.'" ECF 99 ("Motion"). It is supported by an exhibit containing his request to the Bureau of Prisons ("BOP") for compassionate release, and a letter signed by "S.R. Grant, Warden" denying that request. ECF 99-1. In the Motion, defendant asks the Court to reduce his sentence to time served. ECF 99 at 6.

The government opposes the Motion. ECF 106 ("Opposition"). The Opposition is supported by exhibits containing 139 pages of defendant's medical records. ECF 106-1 to 106-4.

Defendant replied. ECF 108. In addition, he filed several letters relating to the Motion, which inform the Court, *inter alia*, of his conditions of confinement and his completion of certain prison education courses. ECF 109; ECF 111; ECF 113. In addition, defendant's uncle, Thomas Jacobs, filed a letter in support of defendant's Motion. ECF 112.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

## I.    Background

On September 16, 2014, Johnson was indicted on charges of possession with the intent to distribute heroin and methylone on February 7, 2014, in violation of 21 U.S.C. § 841(a)(1) (Count One); possession of a firearm on February 7, 2014, in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Two); and possession on February 7, 2014, of a firearm and ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1) (Count Three). ECF 3 ("Indictment"). On the dates of these offenses, February 7, 2014, defendant was on supervised release in this Court in Case CCB-06-0554.

As noted, pursuant to a Plea Agreement (ECF 65), on October 26, 2015, Johnson pleaded guilty to Count One and Count Three of the Indictment.  ECF 64.  In addition, defendant admitted to a violation of his supervised release in Case CCB-06-0554.   ECF 65, ¶ 1.

In the Plea Agreement (ECF 65), the parties stipulated to the following facts, *id.* ¶ 6:

> On February 7, 2014, law enforcement officers went to 407 D Secluded Post Circle, Glen Burnie Maryland, to execute a state arrest warrant for the defendant, Avaun Johnson. Officers saw Johnson walking out of the apartment building with a trash bag in his hand. Johnson saw the police and fled back into the building. Johnson dropped the bag inside. Soon thereafter, Johnson surrendered and was taken into custody.
>
> The bag was searched, and officers found that it contained suspected marijuana. Johnson was taken to the police station where he spontaneously said, "I'm f**ked. They are going to search and find the gun, and I'm a convicted felon with a handgun."
>
> The officers applied for a search warrant of Johnson's apartment. Among other things, the affidavit noted that the trash bag Johnson threw to the ground contained suspected marijuana; and that Johnson spontaneously stated that the officers would find a gun in the house.
>
> The search warrant was executed on February 7, 2014. During the search, officers found 62 grams of heroin, 21 grams of methylone, and paraphernalia for packaging drugs in the kitchen (lab analysis did confirm that the drugs were heroin, a Schedule I controlled substance, and methylone, a Schedule I controlled substance). In the bedroom, officers recovered a gun under the mattress, an ammunition cartridge in a bag, and about $3,700 in a dresser drawer. The firearm was identified as a .380 caliber, Bersa, model Thunder, semiautomatic firearm, bearing serial number C45072. The quantity of narcotics, the manner in which it was packaged, and the related packaging material indicated that the defendant possessed the drugs with the intent to distribute. The defendant admits that he did, in fact, intend to distribute the drugs to other persons. Johnson later waived his Miranda rights and admitted that the drugs and the gun were his.
>
> The gun was later tested and found to be capable of expelling a projectile by the action of an explosive. It therefore meets the definition of a firearm pursuant to 18 U.S.C. § 921(a)(3). The ammunition cartridge located in the bedroom was designed for use in a firearm, thus meeting the definition of ammunition pursuant to 18 U.S.C. § 921(a)(l7).

The firearm was manufactured outside the state of Maryland, and therefore traveled in and impacted interstate commerce prior to the defendant possessing it on February 7, 2014.

Prior to February 7, 2014, the Defendant has been convicted in a court of a crime punishable by a term of imprisonment exceeding one year, and his civil rights had not been restored.

At the time of both the shooting[2] and the search warrant, Johnson was on federal supervised release for a conviction of Possession with the Intent to Distribute, in violation of 21 U.S.C. § 841(a) (Criminal Case No. CCB-06-554, the "VOSR Case"). As such, his possession of the firearm, heroin and methylone on February 7, 2014 was a violation of the statutory conditions of his release in the VOSR Case.

The parties agreed that "because the defendant is a career offender, his adjusted base [offense] level is 32." *Id.* ¶ 6(a). And, pursuant to U.S.S.G. § 3E1.1, the parties agreed to a three-level reduction in defendant's offense level. *Id.* Therefore, defendant had a final offense level of 29. *Id.* ¶ 6(a).

With respect to defendant's criminal history, the Plea Agreement provided, *id.* ¶ 6(b):

The parties agree that the Defendant's criminal history category is V; however, with respect to a conviction of Possession with Intent to Distribute Heroin and Methylone, in violation of 21 U.S.C. § 841(a)(1), he is a Career Offender and therefore his criminal history category as to Count One is VI.

Paragraph 7 of the Plea Agreement is also relevant. There, the parties "agree[d] pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of 151 months imprisonment in

---

2 The Plea Agreement makes no other reference to a "shooting." But, the PSR indicates that on November 6, 2015, defendant was found not guilty of attempted first and second degree murder in the Circuit Court for Anne Arundel County. ECF 71, ¶ 46.

In December 2016, defendant filed a post-conviction petition under 28 U.S.C. § 2255. ECF 80. Judge Garbis denied the petition by Memorandum and Order of July 20, 2017. ECF 88. Of relevance, Judge Garbis recounted that the charges against the defendant were "related to a shooting" of Seifullah Bridges on January 21, 2014, allegedly committed by Johnson. *Id.* at 1; *see* ECF 86-3. Judge Garbis added that Johnson was tried in State court in connection with the shooting and he was acquitted. ECF 88 at 1 n.1.

the custody of the Bureau of Prisons is the appropriate disposition . . . ." *Id.* ¶ 7.  Further, "the parties agree[d] that a concurrent sentence of 48 months imprisonment" was "the appropriate disposition of the Violation of Supervised Release [VOSR] in Criminal Case No. CCB-06-0554." *Id.* (citing *United States v. Johnson*, CCB-06-0554).

According to the PSR, Johnson had previously been convicted of two felony drug offenses. ECF 71, ¶¶ 35, 37.  In particular, in 2004 defendant was convicted in the Circuit Court for Anne Arundel County of possession with intent to distribute a controlled dangerous substance. *Id.* ¶ 35.[3] He was sentenced to three years of imprisonment, with all but 18 months suspended. *Id.*  Johnson was released on January 17, 2006, and his probation was "closed unsatisfactorily" on July 1, 2009. *Id.*

Then, in 2006, defendant was convicted in this Court of distribution of five grams or more of cocaine base.  *Id.* ¶ 37; *see* CCB-06-0554.  He received a sentence of 100 months of imprisonment and four years of supervised release.  ECF 71, ¶ 37.  However, on May 2, 2012, pursuant to 18 U.S.C. § 3582(c)(2) and the Fair Sentencing Act of 2010, Judge Blake reduced the defendant's sentence to 78 months of imprisonment.  CCB-06-554, ECF 86.  Johnson was released on July 27, 2012.  ECF 71, ¶ 37.

The PSR also indicated that in 2005 Johnson was convicted of trespass in the District Court for Anne Arundel County.  *Id.* ¶ 36.  He was sentenced to 90 days of imprisonment.  *Id.*

As a result of the convictions in 2004, 2005, and 2006, Johnson had a total of eight criminal history points.  *See* ECF 71, ¶¶ 35, 36, 37, 38.  And, because Johnson committed the instant offense while on supervised release in relation to his 2006 federal drug conviction, two points were added

---

[3] The drug is not specified.

to his criminal score, pursuant to U.S.S.G. § 4A1.1(d).  *Id.* ¶ 39.  Therefore, Johnson had a criminal history score of ten points.  *Id.* ¶ 40.[4]

Under the Guidelines, a criminal history score of ten would have resulted in a criminal history category of V.  *Id.*  However, based on Johnson's two prior felony drug convictions, he qualified as a career offender.  *See* U.S.S.G. § 4B1.1(b); ECF 71, ¶ 41.  Therefore, his final criminal history category was elevated to VI.  *Id.*

The PSR concluded that, "[b]ased upon a total offense level of 29 and a criminal history category of VI, the guideline imprisonment range is 151 months to 188 months."  ECF 71, ¶ 72.

Sentencing was held on January 5, 2016.  ECF 70.  At the time, Johnson was 29 years of age.  ECF 71 at 2.  Consistent with the Plea Agreement, Judge Quarles imposed a sentence of 151 months of imprisonment, dating from February 7, 2014.  ECF 73 at 2.

No appeal was filed by Johnson.  *See* Docket.  But, on December 30, 2016, defendant filed a petition under 28 U.S.C. § 2255.  ECF 80.  He also filed a supplement (ECF 83), with exhibits.  In sum, he alleged ineffective assistance of counsel.  By Memorandum and Order of July 20, 2017 (ECF 88), Judge Garbis denied the petition.

On June 21, 2020, defendant filed a "Claim for Compassionate Release."  ECF 95 ("First Motion").  By Order of April 2, 2021, I denied the First Motion, on the ground that defendant had

---

[4] As noted, Johnson received two additional criminal history points because he was on supervised release when he committed the instant offense.  But, if he were sentenced according to the Guidelines in effect today, Johnson, with eight criminal history points, would receive only one additional criminal history point for having committed the instant offense while on supervised release.  *See* U.S.S.G. § 4A1.1(e).

However, the amendment is academic here.  Even under the current Guidelines, Johnson's criminal history category would be VI, because he would still qualify as a career offender under U.S.S.G. § 4B1.1(a), (b).

provided no evidence that he exhausted his administrative remedies, as required by 18 U.S.C. § 3582(c)(1)(A).  ECF 98 at 3.

Johnson filed the instant Motion on July 13, 2021.  ECF 99.  As noted, he seeks a reduction of his sentence to time served.  ECF 99.  The government opposes the Motion.  ECF 106.  Johnson replied (ECF 108), and subsequently submitted several letters describing his conditions of confinement and his completion of prison education courses.  ECF 109; ECF 111; ECF 113.  In addition, as mentioned, Johnson's uncle, Thomas Jacobs, submitted a letter in support of Johnson's Motion.  ECF 112.  He states, among other things:  "The family is ready and willing to support Avaun in whatever he may need, and we will ensure that he is afforded all the necessary resources we have available to be able to successfully reintegrate him back into his community."  *Id.*

Defendant is now incarcerated at the United States Penitentiary, Beaumont, which is part of the Federal Correctional Complex in Beaumont, Texas.  *See Find an inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed November 17, 2023).  Dating from February 7, 2014, he has served about 117 months, or 75 percent, of his sentence.  *See* ECF 73 at 2.  He has a projected release date of January 29, 2025.  *See Find an inmate*, *supra*, https://www.bop.gov/inmateloc/.

## II.   Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F. 4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by*

7

*United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

Section 3582 of Title 18 of the United States Code was first enacted as part of the Sentencing Reform Act of 1984. As originally enacted, it permitted a court to alter a sentence only upon motion by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). This meant that a defendant seeking compassionate release had to rely on the BOP Director for relief. *See Bethea*, 54 F.4th at 831; *see, e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

For many years, compassionate release was an infrequent occurrence, because the BOP rarely filed such a motion on an inmate's behalf. *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013). However, as a result of the enactment of the First Step Act ("FSA") in December 2018, a federal inmate could file a motion for compassionate release directly with the court, so long as the inmate first exhausted administrative remedies. *See* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)); *see also United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020).

With the passage of the 2018 FSA, Congress "broadened" the authority of courts to grant

sentencing modifications. *Malone*, 57 F.4th at 173. Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes courts to modify a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction." *Hargrove*, 30 F.4th at 194. This provision is an exception to the ordinary rule that a federal sentence is final. *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021). The FSA resulted in a sea change in the law.

In particular, the 2018 FSA authorized a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A) (emphasis added). That is, once a defendant has exhausted his administrative remedies, or after 30 days have passed from the date on which the warden has received the defendant's request, the defendant may petition a court directly for compassionate release. *Ferguson*, 55 F.4th at 268; *Jenkins*, 22 F.4th at 169; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *McCoy*, 981 F.3d at 276.

Nonetheless, there are restrictions. Under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are met. *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831. In other words, the analysis consists of "two steps." *Bond*, 56 F.4th at 383.

"First, the court must determine the prisoner is eligible for a sentence reduction because he has shown 'extraordinary and compelling reasons' supporting relief." *Bethea*, 54 F.4th at 831 (citation omitted); *see also Bond*, 56 F.4th at 383; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, ___ U.S. ___, 142 S. Ct. 383 (2021). If that criterion is met, the court "must then find that release is appropriate under the 18 U.S.C. § 3553(a) sentencing factors, to the extent those factors are applicable." *Bethea*, 54 F.4th at 831; *see also Malone*, 57

F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021); *Kibble*, 992 F.3d at 330.

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *Jenkins*, 22 F.4th at 169.  However, as the Fourth Circuit has recognized, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'"  *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)).

The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement").  Critically, as discussed below, amendments to the Policy Statement took effect on November 1, 2023.  Prior to the amendments, however, the Policy Statement began: "Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. 1B1.13 (2021).  Interpreting this language in *McCoy*, 981 F.3d at 282, the Fourth Circuit stated that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)."  Therefore, on the basis of that earlier text, the Court held: "When a defendant exercises his . . . right to move for compassionate release on his own behalf, § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts."  *McCoy*, 781 F.3d at 281.  As a result, district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citation omitted); *see also Jenkins*, 22 F.4th at 170.

As indicated, the Fourth Circuit based its holding in *McCoy* and other cases on a version of the Policy Statement that has since been amended.  *See* Sentencing Guidelines for United States

10

Courts, 88 Fed. Reg. 28254 (May 3, 2023) (providing notice of amendments to Congress).  In particular, as a result of the amendments that took effect on November 1, 2023, the Policy Statement now begins: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2023) (emphasis added).  Thus, the Sentencing Commission has made the Policy Statement expressly applicable to defendant-filed motions under § 3582(c)(1)(A).  *Cf. McCoy*, 981 F.3d at 282.

Therefore, it appears that the Fourth Circuit's conclusion in *McCoy*, 981 F.3d at 281, to the effect that "§ 1B1.13 is not an 'applicable' policy statement," is no longer consistent with the Guidelines.  This is because the Policy Statement is now expressly applicable to defendant-filed motions pursuant to 18 U.S.C. § 3582(c)(1)(A).

A court must ensure that any sentence reduction "is consistent with" the Policy Statement's provisions. 18 U.S.C. § 3582(c)(1)(A).  The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):

> (B) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> > (1) (A) extraordinary and compelling reasons warrant the reduction; or
> >
> > (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> >
> > (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> >
> > (3) the reduction is consistent with this policy statement.

The Policy Statement identifies six circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence. *Id.* § 1B1.13(b)(1)–(6). These are: certain medical circumstances of the defendant, such as terminal illness or the inability to receive specialized medical care while incarcerated, *id.* § 1B1.13(b)(1); the defendant's age, *id.* § 1B1.13(b)(2); the defendant's family circumstances, *id.* § 1B1.13(b)(3); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction, of a correctional officer, *id.* § 1B1.13(b)(4); the defendant received an "unusually long sentence," *id.* § 1B1.13(b)(6); and "any other circumstances or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)." *Id.* § 1B1.13(b)(5).

Prior to the amendments, the district court was obligated to consider all non-frivolous arguments for sentence reduction based on intervening changes in the law and factual developments. *Concepcion v. United States*, ___ U.S. ___, 142 S. Ct. 2389, 2396 (2022); *Troy*, 64 F.4th at 184; *United States v. Reed*, 58 F.4th 816, 822 (4th Cir. 2023); *United States v. Brice*, 2022 WL 3715086, at *2 (4th Cir. Aug. 29, 2022) (per curiam). Where appropriate, the district court had to "account not only for the circumstances at the time of the original offense but also for significant post-sentencing developments." *United States v. Mangarella*, 57 F.4th 197, 203 (4th Cir. 2023); *see Martin*, 916 F.3d at 397; *Kibble*, 992 F.3d at 334 n.3. However, such developments did not warrant a recalculation of the Guidelines. *Troy*, 64 F.4th at 184.

Notably, however, § 1B1.13(c) of the Policy Statement now specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists

12

under this policy statement." Nonetheless, "if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*

Section 1B1.13(d) of the Policy Statement, which limits the weight a court may assign to a defendant's rehabilitation while serving a sentence, is also relevant. It provides that, "[p]ursuant to 28 U.S.C. §994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *Id.* "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.[5]*

Even if the defendant establishes that extraordinary and compelling reasons warrant relief, the court must also consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *See Dillon v. United States*, 560 U.S. 817, 826–27 (2010); *Brown*, 78 F.4th at 128; *Mangarella*, 57 F.4th at 200, 203; *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see also United States v. Jones*, 2022 WL 2303960, at \*1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at \*2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a)

---

[5] The Court is mindful that defendant filed his Motion long before the amendment to U.S.S.G. § 1B1.13 went into effect on November 1, 2023. But, even if the Court had decided this case prior to the amendment, the outcome would have been the same, as discussed, *infra.*

factors to the extent applicable in exercising its discretion); *Kibble*, 992 F.3d at 329–30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d at 693–94 (district court must give due consideration to the § 3553(a) factors).  Notably, the recent amendments to the Guidelines did not alter this requirement.

The "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with . . . training, medical care, or other correctional treatment.'" *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)).  As the Fourth Circuit has observed, "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'"  *Bond*, 56 F.4th at 384 (quoting *Jackson*, 952 at 500).  And, in weighing the § 3553(a) factors, the court may consider the terms of a plea bargain.  *Bond*, 56 F.4th at 384–85.

"A district court need not provide an exhaustive explanation analyzing every § 3553(a) factor," nor is it "required to address each of a defendant's arguments when it considers a motion for compassionate release."  *Jenkins*, 22 F.4th at 170; *see Chavez-Meza v. United States*, ___ U.S. ___, 138 S. Ct. 1959 (2018); *High*, 997 F.3d at 187.  But, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or "commit[s] an error of law."  *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167;

14

*see also Brown*, 78 F.4th at 132 (criticizing district judge's "cursory" consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018). And, "'the record as a whole'" must demonstrate that the judge considered the parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion. *Malone*, 57 F.4th at 176 (citations omitted); *see also United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).

That said, "[h]ow much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021). For example, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'" *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*). In providing such an explanation, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors when explaining its compassionate release ruling." *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332. In any event, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190).

### III.  COVID-19[6]

### A.

Health officials confirmed the first case of COVID-19 in the United States on January 31, 2020. *United States v. Pair*, ___ F. 4th ___, 2023 WL 6989947, at *1 (4th Cir. Oct. 24, 2023). Then, on March 11, 2020, the World Health Organization declared COVID-19 a global pandemic.

---

[6] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

*See Seth v. McDonough*, 461 F. Supp. 3d 242, 247 (D. Md. 2020).[7]  Two days later, on March 13, 2020, President Trump declared a national emergency concerning the COVID-19 pandemic. *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19)*, TRUMP WHITE HOUSE (Mar. 13, 2020), https://perma.cc/WF55-8M4P.  That declaration was extended on several occasions.  *See, e.g.*, 88 Fed. Reg. 9385 (Feb. 10, 2023).

COVID-19, which is extremely contagious, caused "a public health crisis more severe than any seen for a hundred years."  *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 461 F. Supp. 3d 214, 223 (D. Md. 2020), *aff'd in part, dismissed in part*, 2022 WL 1449180 (4th Cir. May 9, 2022) (per curiam).  For a significant period, the pandemic "produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it."  *Cameron v. Bouchard*, 462 F. Supp. 3d 746, 752–53 (E.D. Mich. 2020), *vacated on other grounds*, 815 F. App'x 978 (6th Cir. 2020).  For example, businesses and schools were closed or operated on a limited basis, in an effort to thwart the spread of the virus.  *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (August 11, 2022), https://perma.cc/QGL2-3URS.  As the Fourth Circuit recently explained, in the early months of 2020, "a new reality set in.  Nations around the world announced stringent limitations on-in person interaction . . . businesses ground to a halt; and death tolls mounted."  *Pair*, 2023 WL 6989947, at *1.

The judges of this Court "have written extensively about the pandemic."  *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases).  Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the

---

[7] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19.  *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://perma.cc/24J3-UQZN.

pandemic. *Id.* Nevertheless, the Court must reiterate that the COVID-19 pandemic has been described as the worst public health crisis that the world has experienced since 1918. *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020), *abrogation on other grounds recognized by United States v. Phillibert*, 557 F. Supp. 3d 456 (S.D.N.Y. 2021) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration.").

People infected with the coronavirus sometimes experience only mild or moderate symptoms. But, particularly at the outset of the pandemic, the virus caused severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 461 F. Supp. 3d at 223 (citation omitted). On May 11, 2022, the United States "reached more than 1 million COVID-19 deaths, according to a Reuters tally, crossing a once-unthinkable milestone about two years after the first cases upended everyday life." Trevor Hunnicutt & Jeff Mason, *Biden Marks One Million U.S. COVID Deaths After Losing Political Battles*, REUTERS (May 12, 2022), https://perma.cc/TLA5-YNFB. And, as of March 10, 2023—the last day on which Johns Hopkins University updated its COVID-19 data—more than 103.8 million Americans had been infected with COVID-19. *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://perma.cc/J7XS-FYHT.

The Centers for Disease Control and Prevention ("CDC") has identified certain risk factors that may increase the chance of severe illness due to the coronavirus, and has repeatedly revised its guidance concerning medical conditions that pose a greater risk of severe illness due to COVID-19. The CDC most recently updated its guidance in May 2023 to reflect the most current data. *See People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 11, 2023), https://perma.cc/923J-T5P8.

According to the CDC, the factors that increase the risk of severe illness include cancer; chronic kidney disease; chronic liver disease; chronic lung diseases, including COPD, asthma (moderate to severe), interstitial lung disease, cystic fibrosis, and pulmonary hypertension; dementia or other neurological conditions; diabetes (Type 1 and Type 2); disabilities such as Down syndrome; heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and possibly hypertension; HIV; being immunocompromised; liver disease; having a BMI 25 or higher; physical inactivity; pregnancy; sickle cell disease; smoking; solid organ or blood stem cell transplant; stroke or cerebrovascular disease; mental health conditions; substance use disorders; and tuberculosis. *People with Certain Medical Conditions*, *supra*, https://perma.cc/923J-T5P8.

The CDC has also indicated that the risk for severe illness from COVID-19 increases with age, with older adults at highest risk. *See COVID-19 Risks and Information for Older Adults*, CTRS. FOR DISEASE CONTROL & PREVENTION (Feb. 22, 2023), https://perma.cc/VG23-TQMM. Furthermore, "[t]he risk of severe illness from COVID-19 increases as the number of underlying medical conditions increases in a person." *People with Certain Medical Conditions*, *supra*, https://perma.cc/923J-T5P8.

The Fourth Circuit has said that "use of a bright-line rule that accepts only the CDC's highest risk conditions is too restrictive." *Hargrove*, 30 F.4th at 195. That is, a court may not adopt a rule "that conditions not listed in the CDC's highest category, no matter the conditions of the prison and risk of infection, can never qualify as extraordinary and compelling reasons to reduce a sentence." *Id.* at 195 (internal quotation marks omitted). Nevertheless, the court may consider the CDC's guidelines. *Bethea*, 54 F.4th at 832; *United States v. Petway*, 2022 WL 168577, at *3 (4th Cir. Jan. 19, 2022) (per curiam). In any event, "the inquiry should consider

whether the underlying condition places the inmate at an increased risk of severe illness from COVID-19." *Bethea*, 54 F.4th at 832.

### B.

As noted, the coronavirus is "highly contagious." *Pair*, 2023 WL 6989947, at *9. At the outset of the pandemic, some of the "measures we now know to be useful in combating the spread of the virus (such as masking, separation . . . and vaccinations) were either nascent or, as in the case of vaccines, unavailable." *Id.* at *9. Nevertheless, in an effort to prevent the spread of COVID-19, the CDC urged, *inter alia*, the practice of "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CENTERS FOR DISEASE CONTROL & PREVENTION (Jan. 26, 2023), https://perma.cc/UJ98-2V6S; *see also Pair*, 2023 WL 6989947, at *5.

However, social distancing is particularly difficult in the penal setting. *Seth*, 2020 WL 2571168, at *2. Indeed, prisoners have little ability to protect themselves from the threat posed by the coronavirus. *Id.*; *see Cameron*, 2020 WL 2569868, at *1; *see also United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within prisons and detention facilities is particularly high."). Prisoners usually "share bathrooms, laundry and eating areas," and are often "bunked in the same cell" with several others. Amanda Klonsky, *An Epicenter of the Pandemic Will Be Jails and Prisons, if Inaction Continues*, N.Y. TIMES (Mar. 16, 2020), https://perma.cc/3RHL-WNKU. And, they are not free to follow their own rules.

To illustrate, prisoners are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers, nor are they necessarily able to separate or distance

themselves from others. *See* Kim Bellware, *Prisoners and Guards Agree About Federal Coronavirus Response: 'We Do Not Feel Safe,'* WASH. POST (Aug. 24, 2020), https://perma.cc/K6SW-LFGX (reporting use of non-reusable masks for months and a lack of transparency around policies for personal protective equipment and testing). They do not get to decide where, when, or how to eat or sleep.  Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to limit their spread. *See Coreas v. Bounds*, TDC-20-0780, 451 F. Supp. 3d 407, 413 (D. Md. 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Eddie Burkhalter et al., *Incarcerated and Infected: How the Virus Tore Through the U.S. Prison System*, N.Y. TIMES (Apr. 16, 2021), https://perma.cc/TR7Q-8H9J ("The cramped, often unsanitary settings of correctional institutions have been ideal for incubating and transmitting the disease.  Social distancing is often not an option."); Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493, 519–20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2.  Notably, the BOP implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected.  As the Third Circuit recognized in *United States v. Raia*, 954 F.3d

594, 597 (3d Cir. 2020), the BOP made "extensive and professional efforts to curtail the virus's spread."

Thereafter, on March 26, 2020, then Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). And, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, then Attorney General Barr issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. That memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

Two BOP officials, Andre Matevousian, then Acting Assistant Director of the Correctional Programs Division, and Hugh Hurwitz, then Assistant Director of the Reentry Services Division, issued a memorandum on May 8, 2020, to implement the Attorney General's directives on the increased use of home confinement. The memorandum provided that the BOP should prioritize for review for home confinement eligibility those inmates who have either served a certain portion of their sentence or who only have a short amount of time remaining on their sentence.

### C.

There is no cure for the coronavirus. But, medical therapies have continued to improve, and vaccines are now generally available. *See Stay Up to Date with COVID-19 Vaccines*, CENTERS

21

FOR DISEASE CONTROL & PREVENTION (Oct. 4, 2023), https://perma.cc/VZ77-KN7W.  Although the vaccines do not appear to prevent illness, they do seem to reduce the seriousness of the illness.

On January 4, 2021, at about the time the first vaccines became available, the BOP published "COVID-19 Vaccine Guidance."  *See COVID-19 Vaccine Guidance*, FEDERAL BUREAU OF PRISONS CLINICAL GUIDANCE (Jan. 4, 2021), https://perma.cc/P4KL-PEZW.  It provided that administration of the COVID-19 vaccines (Pfizer and Moderna) would "align with [recommendations of] the Centers for Disease Control and Prevention."  *Id.* at 4.  Its plan was for prisoners at heightened risk to receive priority for the vaccine.  *Id.* at 6.  The BOP reportedly received its first shipment of vaccines on December 16, 2020. Walter Pavlo, *Federal Bureau of Prisons Starts Vaccination of Staff, Inmates Soon Thereafter*, FORBES (Dec. 21, 2020), https://perma.cc/2FF2-G6PX.

Much has changed since the coronavirus first emerged in early 2020.  And, the virus, too, has changed repeatedly, with multiple strains and variants.  As of May 11, 2023—the last day on which the CDC updated its vaccine tracker—approximately 69% of the total U.S. population had completed their primary vaccination series (i.e., one dose of a single-dose vaccine or two doses on different days), including 32% of people from ages 5 to 11, 61% of people from ages 12 to 17, 66% of people from ages 18 to 24, 72% of people from ages 25 to 49, 83% of people from ages 50 to 54, and 94% of people ages 65 and up.  *See COVID-19 Vaccinations in the United States*, CTRS. FOR DISEASE CONTROL, https://perma.cc/B2KG-M4E3 (final update May 11, 2023); *Trends in Demographic Characteristics of People Receiving COVID-19 Vaccinations in the United States*, CTRS. FOR DISEASE CONTROL, https://perma.cc/6W5Q-55DR (final update May 11, 2023).

**D.**

In an interview in September 2022 on the CBS television show "60 Minutes", President Biden declared that the pandemic was "over" in the United States.  Alexander Tin, *Biden Says Covid-19 Pandemic is "Over" in U.S.*, CBS NEWS (Sept. 19, 2022).  He stated: "The pandemic is over.  We still have a problem with COVID.  We're still doing a lotta work on it . . . .  But the pandemic is over."  *Id*.  And, on April 10, 2023, President Biden signed into law House Joint Resolution 7, "which terminate[d] the national emergency related to the COVID-19 pandemic."  Pub. L. No. 118-3, 137 Stat. 6 (2023).

Nevertheless, at the time of this writing, data suggests that COVID-19 remains prevalent.  *See COVID Data Tracker*, CNTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 11, 2023), https://covid.cdc.gov/covid-data-tracker/#datatracker-home.  However, there are no "open cases" of COVID-19 at FCC Beaumont, where Johnson is one of about 4,887 inmates.  *See Inmate COVID-19 Data*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp#lastestCovidData (last updated November 20, 2023).

**IV. Discussion**

**A.**

As noted, the Court denied Johnson's First Motion on the ground that he had not provided evidence that he exhausted administrative remedies.  ECF 98 at 3.  In the instant Motion, Johnson asserts that he has now exhausted administrative remedies.  ECF 99 at 4.  In support, Johnson appends to the Motion a letter addressed to the "Warden" requesting compassionate release.  ECF 99-1 at 1.  Also appended to the Motion is a letter sent to Johnson from "A.R. Grant, Warden," stating:  "You requested a reduction in sentence (RIS) based on concerns about COVID-19.  After

careful consideration, your request is denied." *Id.* at 2.  The government concedes that "defendant has exhausted the administrative requirements associated with a First Step Act sentencing reduction request."  ECF 106 at 2.

As a result, I am satisfied that Johnson has met the exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A).

## B.

In the Motion, Johnson argues that his risk of contracting COVID-19 while incarcerated provides an extraordinary and compelling reason for release.  ECF 99 at 4.  According to Johnson, he is "in an adverse environment that increases [his] vulnerability to contract the virus," because "[t]here is no adequate way to practice many of the C.D.C.'s standard[s] in a prison setting."  *Id.* at 3.  Johnson explains, *id.* at 5:

> Due to close living arrang[e]ments impede social distancing.  Prohibiting alcohol based sanitations, not being allowed to clean with bleach, inadequate PPE's such as N-95 face mask; are contrary to C.D.C. guidelines of proper safety and health precautions.

Johnson also suggests that he has certain medical conditions that place him at greater risk of contracting severe COVID-19.  *Id.*  In particular, defendant states that he "suffers from a shortage of breath" and "from high anxiety and PTSD."  *Id.*

With regard to the sentencing factors under 18 U.S.C. § 3553(a), Johnson asserts, *inter alia*, that his "current offense is not a crime of violence," he does not "pose a threat or danger to society," and "has completed an assortment of B.O.P. based programs . . . aimed at better preparing him for re-entry into society and being productive and socially" independent.  *Id.* at 5–6.

In response, the government argues that compassionate release is unwarranted because, although Johnson "points to what he believes to be unsatisfactory conditions and measures in BOP," he "does not point to any particular medical condition that would make his susceptible to a

serious case of COVID-19."  ECF 106 at 3.  According to the government, "PT[SD] and anxiety are not conditions that expose the defendant to any particular COVID-19 risk."  *Id.* at 4.  Moreover, in the government's view, "[t]he defendant's claim of breath issues is vague and does not support a showing of any CDC category."  *Id.*  In fact, the government asserts that "the defendant's BOP medical records," which the government appends to its Opposition, do "not corroborate his claim of any breath issues."  *Id.*

The government also argues that the sentencing factors under 18 U.S.C. § 3553(a) counsel against a sentence reduction.  According to the government, the nature and seriousness of Johnson's offense do not favor relief, because defendant "was . . . engaged in significant drug-trafficking" and "possessed a firearm."  *Id.* at 12.  In addition, the government contends that Johnson's history and characteristics counsel against relief, because it "appears that he was on probation for the 2004 state conviction when he committed the 2006 offense," *id.* at 13 (citing ECF 71, ¶ 35), and he "was on federal supervised release for his 2006 conviction when he committed the instant offense."  ECF 106 at 13 (citing ECF 71, ¶ 39).  According to the government, "[t]he defendant's violation of his supervised release is a significant relevant factor," because it "reflects the defendant's failure to comply with judicial supervision in another case, and . . . demonstrates that the current sentence was an appropriate, negotiated effort to bring about a fair and reasonable to both cases."  ECF 106 at 13.[8]

In his Reply, Johnson reiterates his concern that the BOP has taken inadequate precautions against the spread of COVID-19.  ECF 108 at 3–4.  He also appends certificates evidencing his completion of various prison education programs.  ECF 108-1.

---

[8] As noted, in paragraph 7 of the Plea Agreement, the parties agreed that a concurrent sentence of 48 months of imprisonment was the appropriate disposition of Johnon's VOSR in CCB-06-0554.  ECF 65, ¶ 7.

Section 1B1.13(b)(1) of the recently revised Policy Statement identifies four circumstances under which a defendant's medical condition may provide an extraordinary and compelling reason for relief. *See* U.S.S.G. § 1B1.13(b)(1)(A)–(D). First, under § 1B1.13(b)(1)(A), "a terminal illness (*i.e.,* a serious and advanced illness with an end-of-life trajectory)," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-state organ disease, and advanced dementia," may provide an extraordinary and compelling reason for relief. Second, under § 1B1.13(b)(1)(B), an extraordinary or 26ompeling reason may exist if the defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of . . . aging," and such condition or impairment "substantially diminishes" the defendant's ability to care for himself. Third, under § 1B1.13(b)(1)(C), an extraordinary or compelling reason may exist if "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."

Finally, under § 1B1.13(b)(1)(D), relief may be warranted if:

(i)     the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii)    due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii)   such risk cannot be adequately mitigated in a timely manner.

None of the preceding four circumstances exists in Johnson's case. Johnson does not assert, nor is there is any evidence to suggest, that he is suffering from a terminal illness, *see id.* § 1B1.13(b)(1)(A), or that his ability to care for himself is "substantially diminishe[d]" by a "serious

26

physical or medical condition," "serious functional or cognitive impairment," or his age.  *Id.* §
1B1.13(b)(1)(B).  Johnson's health records evidence a recurrent infection on his scalp.  *See, e.g.,*
ECF 106-2 at 2–3.  But, the records also indicate that this condition has been responsive to
treatment.  *Id.* at 14.  And, there is no basis on which to conclude that Johnson "is suffering from
a medical condition that requires long-term or specialized medical care that is not being provided
and without which the defendant is at risk of serious deterioration in health or death."  *Id.* §
1B1.13(b)(1)(C).

    To be sure, Johnson maintains that he has been affected by a "shortage of breath."  ECF 99
at 5.  But, the medical records appended to the government's Opposition do not show that Johnson
has had any respiratory problems.  For example, a screening report completed on February 3, 2021,
states that Johnson did not have "Cough" or "Shortness of Breath."  ECF 106-2 at 40.  Moreover,
records identifying Johnson's "Health Problems" do not mention any breathing problems, *id.* at
32, 45, and, in other records, Johnson is recorded as having "[d]enied" any respiratory problems.
*Id.* at 21, 26.

    Johnson's assertion that he has "high anxiety and PTSD" is similarly without foundation
in his medical records.  In fact, a report completed by the BOP's Psychology Services dated
February 10, 2021, states: "Inmate JOHNSON voiced no current problems or complaints of a
psychological nature. . . . Showed no signs of psychological distress or impairment suggestive of
active mental illness."  *Id.* at 63.

    Defendant has also failed to demonstrate an entitlement to relief under § 1B1.13(b)(1)(D)
of the Policy Statement, which provides that, in some circumstances, a greater vulnerability to
serious medical complications caused by an infectious disease can provide an extraordinary and
compelling reason for a sentence reduction.  As noted, Johnson's assertion that he suffers from an

unspecified respiratory problem is unsubstantiated.  His claim to suffer from anxiety and PTSD is similarly unsubstantiated.  And, in any event, anxiety or post-traumatic stress are not among the conditions that, according to the CDC, place a person at greater risk of severe infection by COVID-19.  *See People with Certain Medical Conditions*, *supra*, https://perma.cc/923J-T5P8.  Therefore, Johnson has not shown that he has any medical condition that places him "at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of" COVID-19.  U.S.S.G. § 1B1.13(b)(1)(D)(ii); *see People with Certain Medical Conditions*, *supra*, https://perma.cc/923J-T5P8.

Notably, as of the time of writing this Memorandum Opinion, there are no "open cases" of COVID-19 at FCC Beaumont, where Johnson is one of about 4,887 inmates.  *See Inmate COVID-19                              Data*,                              *supra*, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp#lastestCovidData.  Therefore, there is no basis on which to conclude that Johnson is "is housed at a correctional facility affected . . . by (I) an ongoing outbreak" of COVID-19.  U.S.S.G. § 1B1.13(b)(1)(D)(i).  Nor has the Court been provided with any reason to think that FCC Beaumont is "imminently at risk of" being so affected.  *See id.*

In sum, Johnson has not provided a basis on which to conclude that he has any special vulnerability to severe infection with COVID-19.  Instead, he claims that the mere fact of being incarcerated during the COVID-19 pandemic provides an extraordinary and compelling reason for relief.  These assertions do not suffice to show that relief is warranted under the applicable Policy Statement.

28

As mentioned, the Court recognizes that Johnson filed his Motion well before the Policy Statement was implemented on November 1, 2023.  Even under the former standard, however, Johnson's allegations do not constitute an extraordinary and compelling reason for relief.[9]

Under the standard that governed before the recent promulgation of the new Policy Statement, district courts were "'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'"  *McCoy*, 981 F.3d at 284 (citation omitted).  One circumstance that the Fourth Circuit recognized as extraordinary and compelling was a defendant's special vulnerability to severe infection by COVID-19.  *See Brown*, 78 F.4th at 128.  In *Brown*, the Court explained:  "To establish that the risk posed by COVID-10 presents an 'extraordinary and compelling reason' for release, a defendant must allege 'that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that [his] preexisting medical condition increases [his] risk of experiencing a serious, or even fatal, case of COVID-19.'"  *Id.* (quoting *High*, 997 F.3d at 185).  Although "this inquiry [was] multifaceted and . . . account[ed] for the totality of the relevant circumstances, courts within the Fourth Circuit" regularly considered "whether an inmate shows both a particularized susceptibility to COVID-19 and a particularized risk of contracting the disease at his prison facility."  *Brown*, 78 F.4th at 128 (citations and internal quotation marks omitted).

Johnson has not shown that he has a particularized susceptibility to COVID-19.  Indeed, the medical records available to the Court do not reflect any medical conditions recognized by the CDC as placing a person at greater risk of severe infection.  *See People with Certain Medical*

---

[9] The Court applies the law in effect at the time of its decision, not the law in effect at the time the Motion was filed.  *Cf., Maryland Shall Issue, Inc. v. Governor Wes Moore*, ___ F.4th ___, 2023 WL 8043827 (4th Cir. Nov. 21, 2023) (ruling in accordance with law in effect at the time of the appellate decision, not the law in effect at the time of the district court's decision).

*Conditions*, *supra*, https://perma.cc/923J-T5P8. Nor has Johnson demonstrated a particularized risk of contracting the disease at FCC Beaumont. As noted, there are currently no "open cases" at FCC Beaumont. *See Inmate COVID-19 Data*, *supra*, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp#lastestCovidData.

In short, Johnson has failed to identify an extraordinary and compelling reason for relief, whether under the currently governing standard or the one that preceded it. Therefore, his Motion must be denied.

### C.

My conclusion that Johnson has not identified an extraordinary and compelling reason for relief is, by itself, sufficient grounds to deny the Motion. However, even assuming, *arguendo*, that Johnson has identified an extraordinary and compelling reason for relief, I would be required to also consider the factors under 18 U.S.C. § 3553(a), to determine if a sentence reduction is appropriate. *See*, *e.g.*, *Brown*, 78 F.4th at n.8. And, upon doing so, I conclude that they do not support a reduction in Johnson's sentence.

I begin with Johnson's history and characteristics. As noted, the offense for which Johnson is currently incarcerated is his third felony drug offense. ECF 71, ¶¶ 35, 37. It is particularly troubling that defendant committed the instant offense while on supervised release in connection with a federal conviction for distribution of five grams or more of cocaine base. *Id.* ¶ 37. Because of a change in sentencing law, on May 2, 2012, Judge Blake reduced the defendant's 100-month sentence to 78 months. *Id.* As a result, the defendant was released from prison in July 2012. Yet, instead of taking advantage of the change in the law that led to a significant reduction in his sentence, Johnson reoffended in February 2014. Even after a six-and-a-half-year federal sentence, defendant was not willing to conform his conduct to societal expectations.

To be sure, Johnson has compiled a commendable record of participation in prison education courses.  The Court is also mindful that Johnson's uncle has stated in a letter to the Court that defendant "is an honorable man with a good heart and a strong sense of empathy."  ECF 112. According to Jacobs, defendant "plans upon release to work in Heating and Air Condition (HVAC) and continue to pursue his Electrician's trade."  *Id.*  And, as noted, Jacobs writes:  "The family is ready and willing to support Avaun in whatever he may need, and we will ensure that he is afforded all the necessary resources we have available to be able to successfully reintegrate him back into his community."  *Id.*  Nonetheless, this evidence of rehabilitation and family support is outweighed by the seriousness of Johnson's offenses and his history of recidivism.

Finally, given the seriousness of Johnson's offenses and his history of recidivism, a reduction in the sentence would not, in the Court's view, promote respect for the law, provide just punishment, deter criminal conduct, or protect the public from future crimes of the defendant.  *See* 18 U.S.C. § 3553(a)(2)(A)–(C).

## V.  Conclusion

For the foregoing reasons, I shall deny the Motion, without prejudice to Johnson's right to file another motion, if warranted.

An Order follows, consistent with this Memorandum Opinion.


Date: November 21, 2023

_____
/s/
_____
Ellen Lipton Hollander
United States District Judge

31